IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LINDA BLUESTEIN, M.D.,

                  Plaintiff,

     v.

CENTRAL WISCONSIN
ANESTHESIOLOGY, S.C.,

                  Defendant.

OPINION AND ORDER

12-cv-322-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Linda Bluestein, M.D., brought this suit against defendant Central Wisconsin Anesthesiology, S.C., contending that defendant violated her rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12102-12213, under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-718, and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. Defendant denies that plaintiff was ever denied a reasonable accommodation for a disabling condition or terminated in retaliation for her ongoing requests for accommodation or on the basis of sex, but says that even if she had been, she cannot sue for relief because she was not an employee covered under the Americans with Disabilities Act, the Rehabilitation Act or Title VII.

I conclude that plaintiff has failed to show that she was an employee of defendant during the time that she contends she was the victim of discrimination and is therefore not entitled to bring discrimination claims against defendant. I conclude as well that even if

1

plaintiff could bring such claims, she could not succeed on them because she has failed to show that she was discriminated against under either the Americans with Disability Act or the Rehabilitation Act when she was denied the accommodation of an open-ended leave of absence. Moreover, she has not shown that she was treated differently from a similarly situated male anesthesiologist for purposes of her claim under Title VII.

From the findings of fact proposed by the parties, I find that the following facts are undisputed.

## UNDISPUTED FACTS

Defendant Central Wisconsin Anesthesiology, S.C., provides anesthesia medical services. It is run by its physician shareholders under the service corporation's bylaws. It hired plaintiff Linda Bluestein as a part-time anesthesiologist and signed an employment agreement with her on July 1, 1996, that identified her as an employee. A contract she signed a year later also identified her as an employee.

As of January 1, 1999, plaintiff's probation ended and she became a full partner and shareholder of defendant and a member of the board of directors (which included all the physician shareholders.) After June 22, 1999, she received a quarterly distribution equal to that of the other physician shareholders. As a shareholder, she had the power to vote on matters coming before the board. Starting in 2000, she held the elected position of secretary-treasurer of the board for more than three years. From sometime in 2007 until August 31, 2010, she served as chair of the compliance committee of the board.

A majority vote of the physician shareholders was required to resolve any issue involving defendant's physician shareholders, including a physician's change in status. When plaintiff wanted to change her status from working 80% to working 90% in 2004, she was required to obtain the approval of the other shareholders, which she did. Plaintiff could not take vacation days whenever she wanted, but needed to obtain permission to be gone. Plaintiff did not make her own decisions about which cases she would take, about when she would go home, when she could take breaks or whether she would take add-on cases; those decisions were made by a committee of the physician shareholders.

In the fall of 2009, plaintiff allegedly sustained an injury in a kayaking accident. In January 2010, she was granted a week's vacation time to rest. In March 2010, defendant excused her from wearing a lead gown and agreed to assign her to cases that did not require wearing one. Defendant offered to let plaintiff use a full body screen if she had to take a case that would otherwise have required her to wear the protective clothing. In addition, defendant allowed her to use a motorized scooter to help with her condition and rearranged the other physicians' schedules to allow her to utilize her vacation time for four weeks, from March 22, 2010 to April 18, 2010.

On May 3, 2010, plaintiff requested permission that as often as possible, she be allowed to supervise anesthesia cases, rather than handling them, and avoid doing solo cases during the day. The shareholders took up the request at their May 5, 2010 meeting. Because they believed that allowing plaintiff simply to supervise would put an extra burden on the other anesthesiologists, they decided to ask her for information about the expected

3

duration of her condition.  Knowing that she would be arriving late to the meeting and choosing not to put her on the spot, the shareholders suggested asking her to prepare a letter in response to their concerns.  On May 26, plaintiff wrote to tell the other shareholders that she had ischiogluteal bursitis and proximal hamstring tendonopathy and asked to be allowed to supervise as much as possible until July 30, 2010.  She did not enclose any medical documentation in support of her request.

At their June 7, 2010 meeting, the shareholders granted plaintiff's request.  They asked her whether she could handle the work of an anesthesiologist for any kind of case that might come in during a day or week when she was on call and she said she could, but that if she had to work on hard cases day after day, it would slow her healing.  They also asked her to provide an update and advance notice if she could not return to work full time after her August vacation and, if so, what accommodations she might request.

At the next month's meeting on July 28, 2010, plaintiff informed the board that she was scheduled for vacation for the month of August and that she could not give a definite answer about her work status for September, although she planned to return to work.  The board asked her to talk to defendant's chief executive officer, Dean Kellner, in mid-August and again in the last week of August, to give him an idea of her recovery and future intentions.

On August 24, 2010, plaintiff advised the other shareholders by letter that she was unable to meet the physical demands of practicing anesthesiology because of her hamstring tendonopathy.  Kellner Aff., dkt. #45, exh. 33.  She asked for an open-ended medical leave

4

of absence.

Plaintiff was scheduled to work on the last days of August, but failed to report to work. She stopped coming in and stopped communicating with the other shareholders. However, she did attend a September 1, 2010 shareholder meeting at which she told the other shareholders that she could not return to work on a 100% basis, that returning to work at that time would only aggravate her condition and that she was not able to estimate when she could return. At the meeting, the shareholders denied her request for an open-ended leave of absence on a vote of 13 to 1, with one abstention. One doctor moved to grant her a four-month leave of absence, on the understanding that she would be terminated if she was unable to return to work at the end of that time. The board decided to vote by written ballot on two motions: the first, to allow the four-month leave of absence; the second, to allow plaintiff to resign by September 16, 2010 or to be terminated, effective August 31, 2010.

In a September 9, 2010 email, plaintiff asked Kellner to distribute a letter to her colleagues advising them that she would not be having surgery but would be exploring alternative treatments and believed that she would be able to return to work within four months or earlier. This information was transmitted to the other shareholders. Also on September 9, each shareholder received a written ballot asking them to vote on two options: (1) giving plaintiff a four-month leave of absence, on the condition that she would be terminated if she could not perform her duties as an anesthesiologist without restriction upon her return; or (2) allowing her to resign as of August 31, 2010 on the condition that

5

if her letter of resignation was not received by September 16, 2010, she would be terminated as of August 31, 2010.  The result of the balloting was four votes in favor of the medical leave and 12 votes in favor of the second option.

Plaintiff did not resign voluntarily by September 16, 2010, and was terminated on September 17.  At the October 6, 2010 shareholder meeting, the board voted to give plaintiff her deferred compensation as calculated by defendant's deferred compensation formula.

Plaintiff brought this suit on May 3, 2012, after filing timely charges of discrimination with the Equal Employment Opportunity Commission against defendant and receiving a right-to-sue letter less than 90 days before filing this suit.

At all relevant times, defendant had more than 15 non-shareholder, non-physician employees.

OPINION

A. Plaintiff's Employment Status

The initial question is whether plaintiff was an employee of defendant for the purposes of the ADA, the Rehabilitation Act or Title VII when she was allegedly the victim of discrimination.  If she was not, she is not protected by the laws under which she is suing. Defendant maintains that she was not; during the major portion of the time for which she worked as an anesthesiologist with defendant, she was a shareholder and officer with a full vote on the board of directors and the right to share equally in defendant's profits.  Plaintiff believes that the wording of her employment contract controls, because it referred to her as

6

an "employee," and that her status is confirmed by her inability to determine the hours she worked, the breaks she took or the cases she handled.

Merely "affixing the label of 'partner' to someone who [is] functionally an employee" does not avoid liability for discrimination.  EEOC v. Sidley Austin Brown & Wood, 315 F.3d 696, 707 (7th Cir. 2002).  See also Clackamas Gastroenterology Associates v. Wells, 538 U.S. 440, 450 (2003) ("mere fact that a person has a particular title—such as partner, director, or vice president—should not necessarily be used to determine whether he or she is an employee or a proprietor").  In Clackamas, the question was whether the four physician-shareholders who owned a gastroenterology clinic should be counted as employees or employers under the ADA for the purpose of determining whether the clinic was subject to the Act.  The Court did not decide the question, but sent it back to the lower courts to consider the following factors identified by the Equal Employment Opportunities Commission as bearing on the "common-law touchstone of control":

> Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work
>
> Whether and, if so, to what extent the organization supervises the individual's work
>
> Whether the individual reports to someone higher in the organization
>
> Whether and, if so, to what extent the individual is able to influence the organization
>
> Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts
>
> Whether the individual shares in the profits, losses, and liabilities of the organization.

7

Id. (citing EEOC Compliance Manual § 605:0009).

The Court of Appeals for the Seventh Circuit considered a similar case in Schmidt v. Ottawa Medical Center, P.C., 322 F.3d 461 (7th Cir. 2003), before the Supreme Court decided Clackamas.  In Schmidt, the defendant was also a medical service corporation and the plaintiff was alleging that he had been the subject of discrimination in violation of the ADEA.  29 U.S.C. §§ 621-34.  The court of appeals found that the plaintiff was not entitled to sue the service corporation for violating his rights because his role as a shareholder-physician was "akin to that of a bona fide partner-employer rather than that of an employee."  Id. at 466.  The court took the view that "the sharing of control of the enterprise is the sine qua non of partnership," id., and that Schmidt had had ample opportunity to share in the management and control of the corporation.  The fact that his preferences on proposals were not always adopted did not mean that he had not been able to exercise the right to control and the fact that his employment contract referred to him as an employee did not mean that he was one under the ADEA.  Id.  On this last point, the court of appeals anticipated the Court's statement in Clackamas that "the mere existence of a document styled 'employment agreement' [should not] lead inexorably to the conclusion that either party is an employee."  Clackamas, 538 U.S. at 450.

Schmidt argued that the board had full authority to assign patients, but the court found that this did not make him an employee.  Not only was he a member of the board, which meant that he had decision making authority with respect to patient assignment and other matters, but he had absolute authority for the care of his patients once the assignment

had been made.  <u>Schmidt</u>, 322 F.3d at 467.

The holding in <u>Schmidt</u> fits this case.  Like Dr. Schmidt, plaintiff was a shareholder and member of the board and enjoyed the opportunity to share in the control of defendant, a service corporation, and to share in its profits.  She is properly classified as an employer. Applying the EEOC factors discussed by the Supreme Court leads to the same conclusion.

1. <u>Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work</u>

According to the EEOC, when analyzing a professional corporation such as defendant, the court is to examine whether the shareholder-directors operate independently and manage the business or instead are subject to the firm's control. Plaintiff acknowledges that she is a shareholder but argues that she is treated as an employee, not as an employer.  She emphasizes her inability to decide for herself what cases she wanted to do each day because a board committee did all of the scheduling.  It decided which anesthesiologists would do "add on" cases, what hours each doctor would work on any given day and even whether a doctor could have a lunch break.

Setting aside the practical question of how an anesthesiology practice could operate without a schedule, plaintiff's argument misses the point.  The question is not whether she is subject to scheduling constraints but who is it that does the scheduling.  As a member of the board, she is responsible for the scheduling even if she does not happen to be on the

committee that does the actual work.  Plaintiff was not subject to the hiring and firing authority of an organization; she was part of the independently operating group of shareholder-directors that made those decisions.

2. <u>Whether and, if so, to what extent the organization supervises the individual's work</u>

Plaintiff has not proposed any facts that would support a finding that she was *supervised* by the organization.  Although she complained of her scheduling, she has said nothing about oversight of her performance as an anesthesiologist.

3. <u>Whether plaintiff reports to someone higher in the organization</u>

Plaintiff has not shown that she reported to anyone higher in the organization.  Her contention that she did is not supported by her various allegations that other doctors disagreed with her, <u>e.g.</u>, PFOF 26 (Dr. Mason refused to interview candidate for new position that plaintiff had recommended); or that she was required to have the approval of the board for certain matters, <u>e.g.</u>, PFOF 25 (plaintiff could not change her employment from 80% to 90% without board approval); PFOF 29 (plaintiff could not make changes in her work to provide her own accommodation); PFOF 31 (plaintiff could not decide on her own to take a leave of absence).  This factor weighs in favor of finding her an employer.

4. <u>Whether and, if so, to what extent the individual is able to influence the organization</u>

Although plaintiff says that the board members did not always agree with her, she

10

has not shown that she was unable to influence the organization through her position on the board.  Plaintiff was a member of the board from the time she became a shareholder and shared in its management.  She held at least one office on the board and she headed a board committee for a period of time.

Plaintiff tries to play down her influence by saying that others had considerably more influence than she did, that the other board members did not always follow the board rules and that board decisions were often made in the hallway rather than at a formal meeting. Whether or not others were more influential than she was and some decisions were made informally, it is undisputed that she was a member of the board, with the same voting power as every other member.  She does not put this into dispute by saying that the board did not always adopt her suggestions or grant her requests.

This case is entirely different from cases involving large partnerships in which a small group exercises exclusive control over the admission and discharge of employees, determines compensation for other partners and limits the partners who may vote for the members of the managing committee.  E.g., EEOC v. Sidley Austin Brown & Wood, 315 F.3d 696, 703-04 (7th Cir. 2002) (discussing facts of Simpson v. Ernst & Young, 100 F.3d 436 (6th Cir. 1996)).  Plaintiff has not shown that she could not influence the board through her membership.

5. Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts

Plaintiff's original employment contract referred to her as an employee. It was never amended or replaced. In addition, she received a W-2 form, but neither of these documents suffices to show that she was an employee and not an employer, for the same reasons they were not sufficient in Schmidt, 322 F.3d at 467. Although Dr. Schmidt also had an employment contract that referred to him repeatedly as an employee, the court of appeals found him an employer in spite of the wording, because he exercised significant control over the business of the corporation through his membership on the board and his status as a shareholder. As one of eight shareholders, he exercised as much control over his employment as any other member of the board. Id. See also Clackamas, 538 U.S. at 450 (mere fact that contract called plaintiff "employee" did not mean that he was for purposes of discrimination laws). Plaintiff has failed to show that the parties intended her to be an employee of the service corporation.


6. Whether the individual shared in the profits and losses of the corporation

The undisputed facts show that plaintiff shared in the profits and losses of the organization. This factor weighs heavily in finding that she was an employer and not an employee of defendant at the times relevant to her complaint.

I conclude that plaintiff was not an employee of defendant during the times relavant to this action. Therefore, she cannot prevail on her suit against defendant. In any event,

even if plaintiff were an employee, she would not have a viable discrimination claim.

## B. Plaintiff's Disability Claim

Both the Americans with Disabilities Act and the Rehabilitation Act of 1973 prohibit certain employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Rehabilitation Act prohibits discrimination against qualified employees on the basis of a disability by any program receiving federal financial assistance. 29 U.S.C. § 794a(a)(1). Plaintiff has not alleged that defendant receives federal financial assistance, so I will limit this discussion to the ADA.

In order to prove disability discrimination under the ADA, plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job; and (3) she suffered from an adverse employment action because of her disability. Nese v. Julian Nordic Construction Co., 405 F.3d 638, 641 (7th Cir. 2005). Plaintiff fails at the first step of this inquiry because she has adduced no evidence that she is disabled under the ADA's definition, which requires a showing that she has a physical or mental impairment that substantially limits her in one or more major life activities. (Plaintiff could meet the ADA requirements if she could show that she has a record of such an impairment or that her employer regarded her as having such an

13

impairment, id., but plaintiff has not suggested that she would qualify under either of these other categories, so I will disregard them.)

Although expert testimony is not necessary to establish disability in cases in which a lay person can understand an injury or a condition, EEOC v. AutoZone, Inc., 630 F.3d 635, 644 (7th Cir. 2010), it is not enough for plaintiff simply to say that she has certain ailments without explaining the nature of those ailments and how they substantially limit her in one or more major life activities.  Plaintiff says that her ischiogluteal bursitis, her proximal hamstring tendonopathy, sciatica and sacral nerve root cyst affected her mobility, her ability to stand or sit for long periods of time, her ability to walk, her ability to sleep, her lifting capacity and her ability to care for herself, PFOF, dkt. #69, ¶ 54, but she does not provide any detail.  (She did not mention sciatica or sacral nerve root cyst in her complaint and she has provided no evidence that she told defendant about these two conditions, so I will ignore them from this point on.)  In contrast, in AutoZone, 630 F.3d at 644, both the allegedly disabled employee and his wife testified about specific activities that caused the employee pain.  The court found that their testimony demonstrated "what could easily be considered a 'substantial' limitation" and it added that the employee's condition was well documented by medical professionals.

Plaintiff has not proposed any facts at all about her condition and she speaks only in the broadest terms of how the condition limits any of her major life activities.  It may be true that her conditions affect some of her activities of daily living, but she has failed to show not only how they affect her but whether the effect is "substantial," rather than slight

14

or moderate.  <u>Fredricksen v. United Parcel Service</u>, 581 F.3d 516 (7th Cir. 2009) (finding that despite diagnosis of leukemia, plaintiff was only moderately limited in major life activities and therefore not disabled under ADA).

## C. <u>Ability to Perform Essential Duties of Job</u>

Plaintiff maintains that she could have performed the essential duties of her job at all times if defendant had provided her a reasonable accommodation for her bursitis and tendonopathy.  Because she has never explained what these conditions were and how they affected her, it is difficult to assess this statement.  (In addition, plaintiff has never identified any accommodations that were withheld from her, although she mentions a chair, without explaining how that would have helped.)  It is clear, however, that when plaintiff wrote to her colleagues on August 24, 2010, to say that she was unable to meet the physical demands of practicing anesthesia at that time, she did not meet the definition of a qualified individual under 42 U.S.C. § 12111, which defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  At that point, the only remaining question was whether her requested accommodation was a reasonable one.

## D. <u>Reasonableness of Requested Accommodation</u>

When plaintiff wrote to say she was unable to perform the physical demands of her job as of August 24, 2010, she asked for a four-month leave of absence or, alternatively, for an

indefinite leave of absence.  She proffered no evidence that one more leave of absence would restore her ability to work as an anesthesiologist.  In the absence of such evidence, no jury could find that plaintiff was asking for a reasonable accommodation.  She had taken one four-week leave period since her alleged injury during which her injury had not healed and she had had three weeks of vacation before she made her request.  "The ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence. Nowak v. St. Rita High School, 142 F.3d 999, 1004 (7th Cir. 1998).  See also EEOC v. Yellow Freight System, Inc., 253 F.3d 943, (7th Cir. 2001) (employee's request for unlimited sick days was not reasonable accommodation under ADA). Cf. Haschmann v. Time Warner Entertainment Co., 151 F.3d 591, 601-02 (7th Cir. 1998) (employer liable when evidence showed that the plaintiff had requested short leave of absence, not unlimited one).

### E. Sex Discrimination Claim under Title VII

Plaintiff's only claim of sex discrimination is that she was treated differently from a male colleague who had been accommodated by defendant for about 20 months in connection with a disability or medical condition.  She also says that she was not provided disability benefits required under defendant's disability policy.  Her claims are barred by the finding that she is not an employee of defendant and is therefore not in a position to sue on the basis of sex discrimination.  Even if she were an employee, however, the claim would have to be denied because plaintiff has not fleshed out her claim beyond the bare bones of her complaint.  She

does not say what condition the male colleague had, what the circumstances of his leave were or what medical opinions supported his claim, if any.  She does not explain why she thinks she was entitled to disability benefits.  Without that information, it would be impossible to say whether plaintiff's differential treatment might have been sex discrimination.  The same is true for plaintiff's allegations that male physicians were not reprimanded for engaging in improper behavior.  Plaintiff has not provided sufficient information to allow her claim to go forward.

Plaintiff also alleges that she was subjected to patronizing, demeaning treatment by the male physicians, one of whom referred to her as "dear" and had a superior attitude.  Even if her statements are true, they fall far short of creating a hostile work environment.  This may be why plaintiff has not asserted a claim against defendant for maintaining such an environment.

In short, plaintiff would have no viable claim under Title VII even if she were an employee and had the right to sue under this statute.


ORDER

IT IS ORDERED that the motion for summary judgment filed by defendant Central Wisconsin Anesthesiology, S.C., is GRANTED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 12th day of November, 2013.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

17

I